In re **KENT'S ESTATE.**

No. 19318.

County Judge's Court, Palm Beach County.

September 2, 1964.

Raymond C. Alley and Harrison K. Chauncey, Jr. of Alley, Maass, Rogers & Lindsay, Palm Beach, for the petitioner.

Phil D. O'Connell of O'Connell & Cooper, West Palm Beach, for the respondent.

PAUL T. DOUGLAS, County Judge.

George E. Kent, Jr., died in August, 1962, a resident of this county. His will, which was admitted to probate in this court, directs his named trustees to hold the residue in trust, to pay the income therefrom to his widow, Mary G. Kent, for her life and thereafter to pay the remainder over to his then living nephews and nieces.

The creation of the temporary and remainder interests in the residue raised the following questions of law—

1. Does the life tenant receive income on all estate assets from the date of death (other than specific bequests) or does she receive income only upon such assets as remain after the payment of estate debts, taxes and administration expenses; and,

2. Should the executors make adjustments between the income and principal amounts to equalize any inequity realized by either account resulting from the application of the internal revenue laws of the United States?

The co-executor, Charles H. Erhart, Jr., petitioned this court for instructions respecting the law applicable to the above questions.

All interested parties received proper notice of the proceeding. Mary G. Kent, individually, appeared through her attorneys, O'Connell and Cooper. Henry F. Richardson, Esq., was appointed guardian ad litem to represent the interests of the infant remaindermen.

The first question presented turns on a construction of §733.01, Florida Statutes, 1963, which provides in §733.01(2) that the entire net income (with certain exceptions that are not relevant here) passes to the residuary legatee. It is argued by the guardian, however, that nothing in the subsection establishes whether the net income passes as such or should be credited to principal when the residuary legatee is a trustee.

At common law residue was determined by deducting from the gross estate the debts, expenses and (later) taxes payable therefrom. So the majority rule developed that the portion of estate income that was generated by assets later sold to pay debts, expenses and taxes should be treated as principal. Bogert, Trusts, §817 (2d ed.). Without examining the question of whether Florida had adopted that common law rule we are now asked whether §733.01, Florida Statutes, 1963, would change that rule if it in fact existed in this state. At least one county judge's court has held that it would not. In re Brown's Will, 16 Fla.Supp. 120

(1960). There, after discussing the provisions of §733.01, the county judge held, "this court adopts the common law rule which provides that the income earned during the period of administration on the funds used to pay the costs of administration, debts and legacies is to be added to the corpus of the trust." Id. at 123.

The guardian ad litem urges this court to adopt the reasoning in the Brown case.

While the court concedes that the statute may be vague, consideration of the history of the section should dispel all doubt as to its meaning. The predecessor of §733.01 was passed in 1941 and was entitled, "AN ACT . . . to Provide for the Division and Distribution of Net Income of Testate Estates Where There Is a Residuary Estate With Income Payable to One Person and Remainder to another." It provided, in part,

". . . in all cases where the will of a testator provides that the net income from the residuary estate or some part thereof shall be paid to one or more beneficiaries with remainder to others (whether in trust or not), the net income earned on the assets of the estate after the death of the testator, and prior to the distribution thereof, shall be paid and applied as follows:

"(a)    To specific legatees and devisees, the net income from the property specifically bequeathed and devised to them respectively;

"(b)    To general legatees, legal interest on their respective legacies from the time fixed by the county judge in an order of distribution for the payment thereof;

"(c)    To the beneficiaries entitled to net income, that proportion of the remaining net income as the residuary assets, at appraised value, bear to the appraised value of the whole estate (except and excluding specific legacies and devises) ;

"(d)    And the remainder of the net income shall be added to the principal of the residuary estate. . . ." Laws of Florida, Ch. 20413, (1941).

It is obvious that the only reason for the enactment of the present law was to abrogate the then existing statute. Also, the present statute makes no reference to apportionment of income between the temporary and future estates. This court therefore concludes that the legislature intended, and §733.01 means, that the entire net income of an estate (except as is expressly otherwise provided by statute) should be distributed by the executor or trustee as income or stated another way, the income beneficiary

is entitled to the entire net income upon all estate assets except as is provided in §733.01(2)(a) and (b).

The other problems posed by the executors are more complex but resolve themselves into the question of what adjustments should be made between the income and principal accounts to compensate for burdens imposed upon one or the other of such accounts by the operation of the internal revenue laws.

Tax-burden problems may often arise between temporary and remainder interests in an estate but nowhere is the conflict more apparent than in the situation where the fiduciary attempts to minimize the overall tax impact by electing to deduct certain administration expenses on the estate's income tax returns rather than on the estate tax return. This election is afforded by §642 of the Internal Revenue Code of 1954. In large estates the result often is that the income tax is greatly reduced to the detriment of principal which must actually pay not only the items of expense but also a higher estate tax by reason of losing the estate tax deduction.

When this problem was presented to the New York County Surrogate's Court in the now famous case of Matter of Warms, 140 N.Y.S. 2d 169 (1955), the surrogate held it to be proper estate accounting practice to make a compensating adjustment and ordered the executor to reimburse the principal account the amount by which the estate tax had been increased by reason of the executors having elected to take administration expenses on the estate's income tax return.

While this court would approve an account containing a so-called "Warms Adjustment" in a case where principal is depleted by the loss of the deduction, it should be emphasized that the adjustment should not be applied where principal has suffered no loss by reason of the fiduciary's election. This principle has been given recognition in California (Estate of Bixby, 140 Cal. App. 2d 326, 295 P.2d 68 (1956)), and Pennsylvania, (Bell Estate, 8 Ches.Co.Rep. 21 (Pa. Orphans Ct., 1956)).

The court would add, however, that such adjustments are proper only in the event of an election by a fiduciary under § 642 of the Internal Revenue Code. A fiduciary is not required in this state nor should he attempt to cure inequities generally created by the uncorrellated interaction of the tax laws with the principles of estate accounting; these must await legislative attention. (See e.g., Estate of Dick, 218 N.Y.S.2d 182 (Surr. Ct. 1961).